Opinion for the court filed by Circuit Judge LINN.
Dissenting opinion filed by Circuit Judge O’MALLEY.
LINN, Circuit Judge.
Sarah Emanuele (“Emanuele”) appeals the decision of Arbitrator Michael E. Zob-rak, upholding a 25-day suspension from her position as an Air Traffic Controller Specialist at the Federal Aviation Administration (“agency”) for making inaccurate statements on a pre-employment medical questionnaire. Because substantial evidence supports the arbitrator’s decision, this court affirms.
Baokground
Emanuele was employed as an Air Traffic Controller Specialist with the agency in Memphis, Tennessee. As part of the pre-employment process, Emanuele was required to complete a medical history questionnaire, FAA Form 8500 (“the Form”), which the agency uses to determine whether the applicant may work in a safety sensitive position. Question 18 on the form, titled “Medical History,” asked: “HAVE YOU EVER IN YOUR LIFE BEEN DIAGNOSED WITH, HAD, OR DO YOU PRESENTLY HAVE ANY OF THE FOLLOWING? Answer ‘yes’ or ‘no’ for every condition listed below.” Condition b. listed “Dizziness or fainting spell” and included check boxes for yes or no. In her 2007 and 2008 forms, Emanuele had checked “no.”
On January 7, 2009, Emanuele requested acceptance into the Voluntary Leave Transfer Program, through which “the unused accrued leave of one agency officer or employee may be transferred for use by another agency officer or employee who needs such leave because of a medical emergency.” 5 C.F.R. § 630.901. To support her claim of a medical emergency, Emanuele submitted the letter of her physician, Dr. Rekha Pillai, describing an office visit of December 18, 2008. In that letter, Dr. Pillai diagnosed Emanuele with “[s]evere vertigo, possibly secondary laby-rinthitis.” She also stated the following:
[Emanuele] notes that she has had intermittent bouts of vertigo since she was 18 years old, which was the first time she developed the symptom. It was associated with sinus infection. The second attack was at age 21 when she had flu-like symptoms and at 23 she had been on a cruise and returned and developed severe vertigo. Her next attack was at age 25. Since then, she has not had any vertigo, except in summer of this year when she developed severe colitis related to clindamycin.
J.App’x at 72a.
On February 3, 2010, the agency proposed to suspend Emanuele for 30 days for *991 “[failing] to provide complete and accurate information on FAA Forms 8500-8” and, unrelatedly, for making an irresponsible statement. Emanuele appealed the agency’s decision through the National Air Traffic Controllers Association (“union”), alleging that Emanuele’s suspension violated the collective bargaining agreement and the law. The union and the agency agreed to arbitration.
The arbitrator affirmed the agency’s decision on the non-disclosure basis, but reversed the irresponsible statement basis. The arbitrator therefore reduced the suspension to 25 days.
Emanuele appealed and we have jurisdiction under 5 U.S.C. §§ 7121(f) and 7708. Johnson v. Dep’t Vet. Affairs, 625 F.3d 1373, 1376 (Fed.Cir.2010).
Discussion
This court reviews an arbitrator’s decision under the same standard of review as appeals from the Merit Systems Protection Board, affirming unless the arbitrator’s decision is: “(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.” Id. (quoting 5 U.S.C. § 7703(c)(l)-(3)). As the appeal here involves only matters of fact, this court applies the substantial evidence standard.
The arbitrator affirmed the agency’s determination primarily on the basis of Dr. Pillai’s original report detailing Em-anuele’s pre-employment history of vertigo, and Emanuele’s failure to disclose such history on the Form.
It is undisputed that Emanuele indicated on the Form that she had never in her life had dizziness or fainting spells prior to 2008. Because the agency’s charge does not require an intent element, this dispute centers around whether she did indeed experience dizziness or fainting spells pri- or to 2008.
Dr. Pillai’s December 18, 2008 report provides evidence that Emanuele did in fact experience vertigo prior to filling out the Form.[1] As the arbitrator determined, “[t]here is no question that Dr. Pillai reported [that Emanuele] had incidents of vertigo at the age of 18, 21, 23 and 25,” J.App’x at 9a, all of which were prior to her filling out the Form in 2007. The arbitrator further determined that it was more likely that Emanuele did indeed experience vertigo before 2008 because when first confronted with the inconsistency between Dr. Pillai’s report and her representation in the Form, she did not argue that Dr. Pillai had made a mistake. Instead, she contended that dizziness and vertigo are different things so there was no need to report her vertigo in answer to a question that asked only about dizziness.
Emanuele disputes the initial report on three bases. First, she argues that vertigo is not dizziness, citing Taber’s Cy-clopedic Medical Dictionary, which states that “Vertigo is sometimes inaccurately used as a synonym for dizziness” (emphasis added). As the agency correctly concluded in its letter to Emanuele, “one *992 could have dizziness without having vertigo,” but it is “highly unlikely that one could have vertigo without some form of dizziness.” There is substantial evidence in the record to support the determination implicit in the Arbitrator’s decision that vertigo is accompanied by dizziness. For example, Tim Nelson, the official who signed the Proposal of Suspension and Decision Letter, testified as follows in regards to Emanuele’s response:
Q: Now, she has something that she’s admitted as part of her response that details vertigo, correct?
A: Correct.
Q: In her definition, do you see the word “dizziness”?
A: No, I do not.
Q: Have you looked up other definitions?
A: I did research on the Internet. I’ve researched in medical dictionaries. Had conversations with the flight surgeon concerning vertigo. Every definition I read has dizziness in it, or wording that would imply dizziness.
Q: What about this definition [in Em-anuele’s response]?
A: False feeling of motion is [sic] that the room is spinning, or off balance; may result in falling. It’s not saying “dizzy”, but that’s dizzy to me.
JApp’x at 19a(63:3-21). See also JApp’x at 17a(56:8-24) (“Q: In your experience or understanding, is it possible to have vertigo without some form of dizziness? A: No, sire.”); JApp’x at 30a(140:9-18) (“Q: Just because dizziness is not synonymous with vertigo, does that mean that dizziness is not a symptom of vertigo? A: In all the reading that I did, in the encyclopedia and the Internet, dizziness was more often than not listed as a symptom. And if it wasn’t listed under the name ‘dizziness’, there were conditions that described what I would assume as to being dizzy.”). Moreover, while Taber’s Cyclopedic Medical Dictionary says that vertigo and dizziness are not identical, it also describes vertigo as including: “The sensation of moving around in space (subjective vertigo) or of having objects move about the person (objective vertigo).” JApp’x at 123a. This definition provides substantial evidence for the Arbitrator’s finding that Emanuele’s history of vertigo included sensations that should have been reported on a form asking about “Dizziness or fainting spellfs].”
Second, Emanuele argues that Dr. Pillai submitted what appear to be two nearly identical addenda to the record, both dated June 22, 2009, which override the original report. One reads as follows:
Ms. Sarah Emanuele has written a letter to me concerned about what she thinks is incorrect history. She states that she did not have attacks of vertigo since she was 18 years old. She apparently had the flu and she has had sinus infections since then. I am unsure if she states that these were not associated with vertigo or she felt that the vertigo was related to the sinus infection and was not an independent symptom. She states that she developed vertigo four days after she became ill with colitis.... She also states that she did not have vomiting with her vertigo, and on her return visit, she states that she had some dizziness and visual blurring but no vertigo. These corrections are being added to her medical records.
The second addendum omits “I am unsure ... was not an independent symptom.” The arbitrator gave the addenda “[l]ittle *993 weight,” concluding that the earlier report was more credible, and that the “wording found in the addendums reveals that the physician was merely reporting what [Em-anuele] had recently told her. Those later comments reflect [Emanuele’s] position offered in an effort to deflect the impact of Dr. Pillai’s initial reporting.” While the medical history in the first report was made with an eye towards an accurate diagnosis, the latter report was not so intentioned. Moreover, the addenda do not indicate Dr. Pillai’s acknowledgment that he made a mistake in the initial report, and are written to suggest disbelief— i.e. Emanuele is “concerned about what she thinks is incorrect history.” While it is certainly possible that Dr. Pillai was simply mistaken in the first report, this court may not substitute its own judgment for that of the arbitrator, and the arbitrator’s decision to rely on the earlier rather than the later report is supported by substantial evidence.
Third, Emanuele argues that Dr. Pillai made other mistakes in her initial report which cast doubt on the veracity of the remaining statements of Emanuele’s medical history. While they may cast some doubt, the mistakes do not negate the significance of the initial report as substantial evidence.
Emanuele makes several more arguments apart from contesting Dr. Pillai’s initial report. First, she argues that it has been definitively established that she does not have “meniers disease,” which she represents is “the only persistent chronic lifelong medical condition that causes frequent attacks of vertigo.” However, the agency’s charge could be sustained if Em-anuele had suffered even a single instance of dizziness or vertigo prior to her representation on the Form that she had never suffered dizziness. Moreover, meniers disease is not the only possible cause of dizziness.
Second, Emanuele argues that she was never provided instructions in filling out the form. It is unclear why this fact should reveal a lack of substantial evidence for the arbitrator’s decision. More importantly, no instructions appear to be necessary in light of the unambiguous nature of the form: “HAVE YOU EVER IN YOUR LIFE BEEN DIAGNOSED WITH, HAD, OR DO YOU PRESENTLY HAVE ANY OF THE FOLLOWING? Answer ‘yes’ or ‘no’ for every condition listed below.”
Third, Emanuele argues that the arbitrator erroneously found a nexus between her failure to disclose information and the efficiency of the service. As support, she argues that vertigo is not a disqualifying medical condition because she later reported it and did not lose her medical clearance. This argument is meritless. The arbitrator determined that “the proper completion of the medical forms used by the Agency for air traffic controllers is of the utmost importance. The inability to perform the duties even if due to medical reasons can endanger the safety of the flying public.” The Form is intended as a means of evaluating an applicant’s fitness for safety sensitive positions. Even if vertigo is not always a disqualifying medical condition, the agency’s ability to properly evaluate an applicant’s fitness based on accurate information about the applicant’s physical and medical condition certainly impacts the efficiency of the service. Moreover, there is substantial evidence to support the nexus between an air traffic controller’s vertigo, which (as noted by Dr. Pillai) makes Emanuele more dizzy when she is “looking at moving objects,” and her ability to effectively perform her duties.
*994 Fourth, Emanuele argues that the arbitrator failed to consider the Douglas factors in determining the proper penalty. See Douglas v. Vet. Admin., 5 MSPB 313, 5 M.S.P.R. 280 (1981). We note that Em-anuele has not herself analyzed the Douglas factors as they apply to her case. Moreover, the Douglas factors need not “be applied mechanically,” nor must every irrelevant factor be considered in every case, or explicitly stated to be irrelevant. Nagel v. Dep’t of Health & Human Servs., 707 F.2d 1384, 1386 (Fed.Cir.1983). The agency, in its notice of suspension “considered the nature and seriousness of the offense,” noted that the “lack of disclosure brings your trustworthiness and integrity into question,” determined that Emanu-ele’s actions “created a situation in which management had to modify assignments, and adjust work schedules,” and found that Emanuele had received notice “of the importance of providing accurate information on government forms.” In addition, the agency considered the mitigating factor of Emanuele’s emotional distress. Though the agency’s Table of Penalties provided for a 60-day suspension, Emanu-ele was only given a 30-day suspension, which was thereafter reduced by the arbitrator. Emanuele has no cause to complain that the penalty was not appropriate to her misconduct.
Finally, Emanuele makes a number of miscellaneous arguments, including contesting the agency’s delay in implementing her suspension, and contesting the agency’s failure to give her notice of the potential penalties for failure to disclose all relevant information. We have considered these arguments and find them meritless.
CONCLUSION
For the reasons stated above, this court affirms Emanuele’s 25-day suspension for failing to provide complete and accurate information on a medical disclosure form.
AFFIRMED
Costs
Each party shall bear its own costs.

. Doctor Pillai's report did not appear to draw any distinction between Emanuele’s earlier bouts of vertigo, which she alluded to only in shorthand form, and her current bout of vertigo, which she described in more detail. Accordingly, there is little reason to attach any real significance to her reference to "dizziness” in connection with the 2008 instance and not in connection with her previous incidents.